```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHARLES KAPLAN,

                       Plaintiff,            MEMORANDUM OF
                                             DECISION & ORDER
          -against-                          2:18-cv-02972 (ADS)(AKT)

WINGS OF HOPE RESIDENCE, INC., ALAN
SKAWINSKI, BOB SKAWINSKI and SEAN
JEREMY,

                       Defendants.
----------------------------------------------------------X
```

**APPEARANCES:**

**Law Offices of Yale Pollack, P.C.**
*Counsel for the Plaintiff*
66 Split Rock Road
Syosset, NY 11791
    By:    Yale Pollack, Esq., Of Counsel

**Brendan Chao, Esq.**
*Counsel for the Defendants*
50 Merrick Road, Suite 200
Rockville Centre, NY 11570


**SPATT, District Judge**:

    On May 18, 2018, Charles Kaplan ("Kaplan" or the "Plaintiff") commenced this action against Wings of Hope Residence, Inc. ("Wings of Hope"), Alan Skawinski ("Alan"), Bob Skawinski ("Bob"), and Sean Jeremy ("Sean") (together, the "Defendants") after his eviction from a Wings of Hope residence in Huntington Station, New York (the "Residence"). The Plaintiff alleges that the Defendants are liable for failure to pay minimum wages and overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and failure to pay

1

minimum wages, overtime wages, spread of hours, and failure to supply notices in violation of the New York Labor Law ("NYLL").  Kaplan also asserts a common law negligence claim for allowing the Residence to become unsafe and hazardous to its occupants.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.

For the following reasons, the Defendants' motion to dismiss is granted in part.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

After being laid off from his teaching job in August 2010, the Plaintiff spent two years unsuccessfully searching for employment.  By July 2012, the Plaintiff was unable to continue to pay rent for his apartment and became homeless.  Kaplan lived in a homeless shelter in Port Jefferson, New York until August 2012, when he moved into the Residence, one of the homes owned and operated by Wings of Hope.  Unlike many of the Residence's occupants, the Plaintiff had no issues with substance abuse and was not on parole or probation.

Wings of Hope is a New York corporation based on Long Island that assists individuals in transitioning from treatment facilities to the general public by providing safe and clean housing. It owns approximately 12 residences in Suffolk County which each house between 10 and 16 residents.  Residents are charged between $450 and $550 in rent per month.  Alan owns and operates Wings of Hope.  He has the authority to hire and fire employees and exercises operational control over the company.  The complaint also alleges that Bob, Alan's brother, and Sean, Bob's

replacement, had the power to "hire, fire, and control the wages and working conditions" at Wings of Hope.

After two years of living at the Residence, Bob informed the Plaintiff that he was selected as the House Manager. Kaplan did not want to accept the position but was told that he would be removed from the Residence if he failed to comply. The House Manager is an uncompensated position that required the Plaintiff to be available 24 hours a day, 7 days a week, and includes the following responsibilities: (1) collecting rent from the residents; (2) filling out leases when a new resident arrives; (3) evicting residents; (4) settling disputes amongst residents; (5) overseeing the cleanliness of the Residence; (6) enforcing rules; (7) purchasing supplies; (8) overseeing repairs; (9) preparing incident reports; (10) communicating with emergency services workers, parole officers and other individuals who visit the Residence; (11) collecting the mail; (12) handling medical emergencies; and (13) fielding neighbor complaints. Many of these responsibilities required the Plaintiff to work at all hours of the day and night; accomplish unorthodox tasks; and respond to conflicts. Kaplan was threatened by other residents and even assaulted on one occasion. He estimates that he was required to address a situation in the middle of the night between three and four times per week.

From August 2015 to August 2017, the Plaintiff liaised with Bob, who visited the Residence one to two times per month to collect rent. The complaint contends that Bob oversaw all houses owned by Wings of Hope and liaised with House Managers. Kaplan kept Bob abreast of any major issue that occurred at the Residence, although Bob typically either failed to respond to a situation or asked the Plaintiff to handle it himself. Alan allegedly fired Bob in August 2015. From that point until he was evicted, the Plaintiff purportedly liaised with Sean, who had similar

3

responsibilities as Bob did prior to his termination. Sean's focus was not on Residence problems but on ensuring that the Plaintiff collected rent.

Kaplan also argues that the Residence was filthy and unsafe for its occupants, with garbage strewn around the house, feces left in the bathroom, mold in various locations, and a bed bug infestation. The bed bug infestation lasted throughout the five-year period that the Plaintiff occupied the Residence and he was bitten regularly by the insects. Although Kaplan complained to Bob about the bed bugs in June 2013 and to Sean when he arrived, no response was received and no action was taken. At one point, Alan allegedly told the Plaintiff: "Why should I pay to have an exterminator come in and get rid of the bedbugs? I don't live there, and I didn't bring them into the house."

In October 2017, the Plaintiff was evicted from the Residence.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Second Circuit

4

has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT

In support of the instant motion, the Defendants attached five exhibits: (1) a license agreement between Wings of Hope and the Plaintiff (the "Agreement"); (2) an Order to Show Cause to Vacate a Default Judgment; (3) an Order on Motion, dated May 24, 2017; (4) an Order on Motion, dated May 19, 2017; and (5) a declaration from Alan. The Plaintiff's opposition memorandum includes a declaration from Kaplan which adds additional facts to supplement his

complaint. To decide the instant motion, the Court must determine whether the parties' declarations and the Defendants' supporting documents may be considered.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796, at *7 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

After reviewing the complaint in conjunction with the Defendants' exhibits, the Court finds that these documents are either incorporated by reference or subject to judicial notice. The

Agreement is specifically referenced in paragraph 46 of the complaint. *See* Compl. ¶ 46 (As the House Manager, Plaintiff performed the following duties, among others, for Defendants: … b. Filling out Tenant Agreement forms (i.e. leases) when a new resident was placed in the [Residence] by the Suffolk County Department of Social Services[.]"). The remainder of the exhibits are all court documents involving the Plaintiff's eviction. While the Plaintiff's eviction is mentioned in the complaint, none of these documents are referenced nor is the substance of the document discussed. *Cf. Gesualdi v. Fazio*, No. 16-CV-5209, 2017 WL 8794775, at *1 n.2 (E.D.N.Y. Dec. 12, 2017), *report and recommendation adopted sub nom. Gesualdi v. Difazio*, 2018 WL 1202640 (E.D.N.Y. Mar. 8, 2018); *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) ("The Complaint thus 'relies on the terms and effect' of the [letters], rendering those documents 'integral' to the Complaint and appropriate for consideration in adjudicating a motion to dismiss." (internal citations omitted)); *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (Spatt, J.) (considering letters because "they were incorporated by reference and … integral to the complaint").

However, the Court takes judicial notice of these documents. The facts referenced are not disputed and are capable of being verified by sources whose accuracy cannot be reasonably questioned. *See* FED. R. EVID. 201(b); *Ruffins v. Dept. of Corr. Servs.*, 701 F. Supp. 2d 385, 390 n.2 (E.D.N.Y. 2010) (collecting cases); *Glover v. Connecticut Dept. of Corr.*, 575 F. Supp. 2d 390, 391 n.1 (D. Conn. 2008) (taking judicial notice of relevant state-court documents).

Both parties also submitted affidavits which assert facts in greater detail than those in the complaint. These affidavits are not attached as exhibits or incorporated by reference, are not material subject to judicial notice, and are not integral to the complaint. When either party submits matters outside the pleadings that do not fall into the above categories in connection with a motion

to dismiss, pursuant to Rule 12(b)(6), the Court may either exclude them and decide the motion on the facts in the complaint alone, accepted as true, or convert the motion to one for summary judgment and provide the opportunity for the parties to submit additional material. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). The Court declines to convert the motion into one for summary judgment. Accordingly, the additional factual assertions in the affidavits will not be considered in the course of deciding the instant motion. *See, e.g.*, *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint.").

## C. THE FAIR LABOR STANDARDS ACT

The FLSA provides a series of protections for employees that are covered by the statute, including federal minimum wage and overtime protections. *See* 29 U.S.C. § 206-07; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008) ("Under the terms of the FLSA, employers, as defined, are required to pay their employees specified minimum wages and overtime."). Congress passed the FLSA in order "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (quoting 29 U.S.C. § 202(a)). In interpreting the FLSA, "courts construe [it] 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Jacobs v. New York Founding Hosp.*, 577 F.3d 93, 96 n.2 (2d Cir. 2009) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)).

This dispute concerns sections 6 and 7 of the FLSA, which provide, in pertinent part:

8

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, [minimum wage]. …
>
> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives an overtime premium wage.

29 U.S.C. §§ 206(a), 207(a).

To establish a claim under the FLSA, a plaintiff must allege that "(1) the defendant is an employer subject to … [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of … [the FLSA]; and (3) the employment relationship is not exempted from … [the] FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017).

### D. AS TO WHETHER WINGS OF HOPE IS SUBJECT TO THE FLSA

The Defendants contend that the Plaintiff has failed to establish the first requirement, that he allege facts to establish that Wings of Hope is subject to the FLSA.

Both the overtime and minimum wage provisions apply to companies whose employees are either (1) "engaged in commerce or in the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009). These are commonly known as "individual" and "enterprise" coverage respectively. *Jacobs*, 577 F.3d at 96.

#### 1. Individual Coverage

To plead that he is subject to individual coverage, a plaintiff must allege that he was personally engaged in commerce or the production of goods for commerce. *Osuwu v. Corona Tire*

*Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) ("[T]he employee bears the burden of establishing his individual coverage." (internal citations omitted)).

"To determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the act." *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009); *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211, 79 S. Ct. 260, 3 L. Ed. 2d 243 (1959) (holding that when inquiring whether employees are "engaged in commerce," courts should review "the activities of the employees and not on the business of the employer").

"Employees are 'engaged in commerce' within the meaning of [the FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. However, "the FLSA's coverage does not extend to every business that affects commerce." *Lamont v. Frank Soup Bowl, Inc.*, No. 99-CV-12482, 2001 WL 521815, at *3 (S.D.N.Y. May 16, 2001). Congress specifically excluded "coverage employees whose activities merely 'affect commerce,' indicat[ing] its intent not to make the scope of the [FLSA] coextensive with its power to regulate commerce.'" *Mitchell*, 358 U.S. at 211. "The dispositive test for FLSA coverage asks whether a plaintiff was an employee in the channels of interstate commerce, as distinguished from [an employee] who merely affected that commerce." *Xelo v. Mavros*, No. 03-cv-3665(NG)(MDG); 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (internal citations and quotation marks omitted).

The Defendants contend that the Plaintiff does not allege that the Plaintiff was engaged in commerce or in the production of goods for commerce. To be engaged in commerce, a "substantial

10

part" of an employee's work must be connected to interstate commerce. *See Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572, 63 S. Ct. 332, 87 L. Ed. 460 (1943) ("If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established …, he is covered by the Act."); *Remmers v. Egor*, 332 F.2d 103, 104 (2d Cir. 1964) (per curiam) ("'[S]poradic or occasional shipments of insubstantial amounts of goods' are insufficient to bring an employee within the coverage of the act." (citing *Mabee v. White Plains Pub. Co.*, 327 U.S. 178, 181, 66 S. Ct. 511, 90 L. Ed. 607 (1946))).

Here, the complaint recites the Plaintiff's job responsibilities. Relevant to the present issue, the Plaintiff purchased cleaning supplies to clean the Residence, and collected incoming mail on a daily basis. These bare bones allegations regarding the Plaintiff's duties are not described with any factual details. The complaint is silent on where the supplies purchased for the Residence were procured or whether they originated outside of New York State. These responsibilities, plead without any factual detail, are insufficient. *See, e.g.*, *Alonso v. Tepa Mar Y Tierra Inc.*, No. 3:11-CV-1783, 2013 WL 12124018, at *2 (N.D. Tex. Feb. 5, 2013) (holding that the complaint failed to state a claim for individual coverage because it "merely describes [plaintiff's] work").

Further, the complaint does not reveal the amount of work done by the Plaintiff related to interstate commerce. A list of job responsibilities without further detail does not provide any information about what, if any, percentage of his time was related to interstate commerce. Without understanding the frequency with which the Plaintiff accomplished certain tasks, it is not possible to ascertain that a substantial part of the Plaintiff's work related to interstate commerce. *See, e.g.*, *Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) ("Her allegations of regular use of items ordered from outside of New York or regular contract with persons and organizations also from out of state are vague, provide no information about the frequency of those

11

contacts, and therefore cannot support an assertion that a substantial part of Plaintiff's work closely relates to interstate commerce." (internal quotation marks omitted)).

Accordingly, the Plaintiff has failed to allege that Wings of Hope is subject to individual coverage under the FLSA.

### 2. Enterprise Coverage

The Defendants also argue that Wings of Hope is not subject to the FLSA based on enterprise coverage. To allege that an employer is subject to enterprise coverage, a plaintiff must plead that an employer has (1) employees engaged in commerce or in the production of goods for commerce; and (2) an annual gross volume of sales greater than $500,000. 29 U.S.C. § 201(s)(1)(A); *Jacobs*, 577 F.3d at 99 n.7 ("We note that the existence of FLSA enterprise coverage is a two-step determination, and the Employees must ultimately prove both steps.").

Generally, the first prong is easily satisfied, as a plaintiff only has to allege that he or she "handled supplies or equipment that originated out-of-state." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011); *see also Jacobs*, 577 F.3d at 99 n.7 ("The [first] requirement is rarely difficult to establish, however, because it is met by showing that two or more employees have 'handl[ed] … materials that have been moved in … commerce[.]'" (quoting 29 U.S.C. § 201(s)(1)(A))); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 328 (S.D.N.Y. 2002) ("[T]he employee does not himself need to be involved in an activity that affects interstate commerce; even a local laundry is covered if the soap it uses moved in interstate commerce." (internal citations and quotation marks omitted)).

The Plaintiff's general allegations are devoid of the factual details required for the Court to review whether any employees were engaged in interstate commerce. While the complaint includes the Plaintiff's general job responsibilities, such as purchasing supplies for the Residence,

collecting mail or overseeing repairs, nothing indicates that any of these responsibilities had an interstate component. Many of the supplies purchased by house managers may have been made outside of New York or transported across state lines. An allegation that asserts that a defendant's employees purchased or handled out-of-state cleaning supplies would have fulfilled this requirement. *See Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) ("Plaintiff contends initially that he has engaged in commerce by ordering cleaning supplies and equipment for the [defendant] from out-of-state vendors by telephone and facsimile. Such purchases will be sufficient to invoke the protection of the FLSA unless they involve only 'sporadic and occasional shipments of insubstantial amounts of goods.'" (citing *Mabee*, 327 U.S. at 181; *Remmers*, 332 F.3d at 104)). However, without even a bare assertion that any of the employees' tasks involved interstate commerce, the Plaintiff's allegations are insufficient.

In order for the Court to find that the complaint is sufficient to establish the first prong, it would have to infer that the employees' activities necessarily require them to engage in interstate commerce. Several courts in the Second Circuit have concluded, from the nature of the job responsibilities exclusively, that these tasks had an interstate component. *See, e.g.*, *Locke v. St. Augustine's Episcopal Church*, 690 F.Supp.2d 77, 88 (E.D.N.Y. 2010) ("Cleaning products purchased locally 'have been moved in or produced for commerce,' and custodians are employees who handle these products." (quoting *Boekemeier*, 86 F. Supp. 2d at 285)); *Shim*, 2009 WL 211367, at *3 (holding that alleging the defendant is a medical facility sufficient to invoke enterprise coverage because "it is simply inconceivable that none of the medical, custodial or office supplies used at [the defendant's facility] originated outside of New York"); *Archie v. Grand Cent.*

13

*Partnership, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (finding that bags, brooms, flashlights, shovels, and pails "undoubtedly moved in interstate commerce to New York City.").

However, as another court in this District recently noted, without requiring a plaintiff to allege sufficient facts that allow the Court to plausibly conclude that he or she met the interstate commerce requirement, "*Twombly* and *Iqbal* [would be] seemingly irrelevant to the FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895(LDH)(SJB), 2018 WL 3742696, at *9 (E.D.N.Y. May 18, 2018). In pertinent part, the *Payamps* Court explains:

> [W]e know that in this Circuit [*Twombly* and *Iqbal*] are not irrelevant. A plaintiff may not simply allege that he was entitled to overtime, full stop. Plaintiffs must allege overtime without compensation in a given workweek, and not an all-purpose pleading template alleging overtime in some or all workweeks. Nor is it acceptable for a plaintiff to just track the statutory language of the FLSA[,] but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation. Rather, a plaintiff must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked forty hours in a given week. Only with such factual context will a plaintiff's overtime claim move from merely conceivable to plausible, and thereby survive a motion to dismiss.

*Id*. (internal citations and quotation marks omitted). This reasoning applies equally to the FLSA's interstate commerce requirement. Although, the pleading requirements for individual and enterprise coverages are quite relaxed, the Plaintiff is still required to allege facts to plausibly conclude that the job responsibilities of House Managers were connected to interstate commerce. Failing to allege specific facts that allow the Court to draw that conclusion weakens *Twombly* and *Iqbal* and weakens the FLSA's interstate requirement. The Court declines to conclude that House Managers were connected to interstate commerce based only on a list of job responsibilities.

Although the Plaintiff does not successfully allege the first element, the second is easily satisfied. The complaint asserts that Wings of Hope charges its residents between $450 and $550 per month in rent. With approximately 12 homes that are occupied by between 10 and 16 residents,

14

the minimum annual gross revenue is approximately $648,000. This exceeds the $500,000 threshold set by the statute. *See* 29 U.S.C. § 201(s)(1)(A).

Accordingly, the Plaintiff has failed to allege that Wings of Hope is subject to enterprise coverage under the FLSA.

**E. AS TO WHETHER BOB SKAWINSKI AND SEAN JEREMY ARE INDIVIDUALLY LIABLE**

The Defendants dispute whether Bob and Sean may be held liable as employers under the FLSA. Specifically, they argue that in the totality of the circumstances, Bob and Sean did not exercise operational control. The Plaintiff contends that the allegation that Sean and Bob regularly communicated with Kaplan to advise him how to handle certain situations in the Residence demonstrates the existence of operational control. Alternatively, Kaplan requests that the Court supplement the complaint with the facts alleged in the Plaintiff's declaration.

As discussed in Section II.B., the Court will not utilize the Plaintiff's declaration for the purposes of deciding the instant motion. The Court's evaluation of individual liability is restricted to the facts present in the complaint, taken in the light most favorable to the Plaintiff.

To determine whether an individual qualifies as an employer for the purposes of the FLSA, the "economic realities test" is utilized. *Carter v. Dutchess Comm. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) ("It is common ground that courts, in determining whether an employment relationship exists for the purposes of the FLSA, must evaluate the 'economic reality' of the relationship."). In *Carter*, the Second Circuit established the following four factors to determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment

records." *Carter*, 735 F.2d at 12 (citing *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (same).

The Second Circuit emphasizes that these factors are non-exhaustive and that a district court's inquiry is fact intensive. None of the above factors are to be considered dispositive. *See Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). "To the contrary, … they provide 'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 143 (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75-76 (2d Cir. 2003)). In 2013, the Second Circuit clarified the *Carter* test as it pertains to individual defendant liability, holding that:

> to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that related to a plaintiff's employment. It is appropriate … to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate "employer" status.
>
> …
>
> A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. Although this does not mean that the individual "employer" must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules—the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but—for causation. Although the answer in any particular case will depend, of course, on the totality of the circumstances, the analyses in [prior Second Circuit] cases … as well as the responsibilities enumerated in the *Carter* factors, provide guidance for courts determining when an individual's actions rise to this level.

*Irizarry*, 722 F.3d at 109-10 (internal citations omitted).

The first element of the *Carter* test examines whether Sean and Bob "had the power to hire and fire employees[.]" *Carter*, 735 F.2d at 12. While the complaint proclaims that Alan, Bob and

Sean "had the power to hire, fire, and control the wages and working conditions of Plaintiff," the Plaintiff has provided no factual support for this allegation as it pertains to Bob and Sean. Kaplan merely tracks the language laid out in *Carter*. There are no underlying facts that allow the Court to plausibly conclude that Bob and Sean ever had the power to make employment decisions involving the hiring or firing Wings of Hope employees. The complaint notes that "Plaintiff was approached by "Bob", who told Plaintiff that he was being made the new House Manager." There are no facts that reveal whether Bob made the decision to appoint Kaplan to the position. Simply informing someone that he or she has been hired does not plausibly suggest that the messenger is the individual responsible for the hiring.

The second *Carter* factor asks whether the individual defendants "supervised and controlled employee work schedules or conditions of employment." *Carter*, 735 F.2d at 12. The complaint alleges that [Bob] visited the Residence approximately one to two times per month, primarily to collect rent. Kaplan informed Bob of various issues that arose, but either never received a response back or was told to handle the situation himself. As Bob's replacement, Sean was given the same responsibilities. These individuals did not exercise any material control over his conditions of employment. While they visited the Residence to collect the rent and received notice of events that occurred in the Residence, the Plaintiff overstates the importance of these facts. Notifying Bob or Sean of issues occur at the house does not allege that these individuals supervised or controlled conditions of Kaplan's employment. Rather, the Plaintiff was typically told to either handle it himself or did not receive a response regarding the issue. This is hardly the behavior of a supervisor with the power to control his employees' working conditions. These allegations do not plausibly suggest any demonstrable level of supervision or control regarding work schedules or conditions of employment.

The third and fourth factors inquire as to whether the individual defendants "determined the rate and method of payment," and "maintained employment records." *Carter*, 735 F.2d at 12. The complaint does not contain any facts that can be construed to plausibly allege either practice. There are no allegations that Bob or Sean ever made a decision regarding employee wages or maintained employment records.

In the totality of the circumstances, the complaint does not contain sufficient factual pleadings "showing [their] authority over management, supervision, and oversight … in general." *Irizarry*, 722 F.3d at 111 (internal citations omitted). Bob and Sean's house visits to collect rent along with their communications with Kaplan about potential issues fall short of what is required to plausibly conclude that they had operational control over the Plaintiff or the rest of the House Managers. It is unclear if the Plaintiff's communications were consistent with an advisory relationship or an employer-employee relationship. Kaplan was never provided with instructions on how to handle a particular situation, reprimanded in any way, or given additional responsibilities consistent with a supervisor that had authority over him. Without additional supporting facts, reading the complaint in the light most favorable to the Plaintiff, the Court cannot conclude that Sean and Bob exercised any operational control over Kaplan.

A review of the *Carter* factors and consideration of the totality of the circumstances concludes that Bob and Sean do not qualify as employers for the purposes of FLSA liability.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Plaintiff's complaint, pursuant to Rule 12(b)(6), is granted in part.

The Plaintiff's first and third claims are dismissed without prejudice. Further, he has failed to plead that FLSA liability exists for Bob and Sean. The Plaintiff is granted leave to amend his complaint in a manner consistent with this opinion.

It is **SO ORDERED**:

Dated: Central Islip, New York

December 7, 2018

                                                                           */s/ Arthur D. Spatt*

                                                                       ARTHUR D. SPATT

                                                      United States District Judge