UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CHARLES KAPLAN,

                       Plaintiff,

           -against-

WINGS OF HOPE RESIDENCE, INC., ALAN
SKAWINSKI, BOB SKAWINSKI and SEAN
JEREMY,

                    Defendants.
---------------------------------------------------------X

**FILED**
**CLERK**

11:08 am, Feb 10, 2020

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF
DECISION & ORDER**
2:18-cv-2972 (ADS) (AKT)

**APPEARANCES:**

**Yale Pollack, Esq.**
*Attorney for the Plaintiff*
66 Split Rock Road
Syosset, NY 11791

**Brendan Chao, Esq.**
*Attorney for the Defendants*
50 Merrick Road
Rockville Centre, NY 11570

**SPATT, District Judge**:

# I.   BACKGROUND

## A.  Initial Complaint and Proceedings

Charles Kaplan (the "Plaintiff") brought a Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, New York Labor Law ("NYLL"), and negligence action against Wings of Hope Residence, Inc. ("Wings of Hope"), Alan Skawinski ("Alan"), Bob Skawinski ("Bob"), and Sean Jeremy ("Sean") (together, the "Defendants") after his eviction from a Wings of Hope residence in Huntington Station, New York (the "House"). ECF 1. All of the individual parties reside in New York, and Wings of Hope is a New York corporation. *Id.* at

3.  He alleged that the Defendants were liable for failure to pay minimum wages and overtime wages, in violation of the FLSA, and failure to pay minimum wages; overtime wages; spread of hours; and failure to supply notices under the NYLL.  *Id.* at 10–14.  As to negligence, he claimed that the Defendants permitted the House to become unsafe and hazardous to its occupants.  *Id.* at 14–15.

The Defendants moved under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6) to dismiss the complaint for failure to state a claim.  ECF 8.  In December 2018, the Court granted that motion in part, dismissing without prejudice the FLSA claim and the NYLL overtime claim, ruling that the Plaintiff failed to plead that FLSA liability existed as to Bob and Sean, and granting the Plaintiff leave to amend his complaint.  ECF 27.

### B.  Amended Complaint and the Pending Motion to Dismiss

Shortly after the Court issued its order, the Plaintiff filed an amended complaint.  ECF 29.  The Plaintiff alleged that Wings of Hope is a company that assists individuals in transitioning from treatment facilities to the real world by providing safe and clean housing for them.  *Id.* at 3.  He alleged that in 2012, he was homeless and was placed in the House.  *Id.* at 5.

The Plaintiff also alleged that upon arriving at the House, he learned that it was unsafe for human habitation, with "garbage strewn around the house, feces in the bathroom, mold throughout the House and other dangerous conditions that affected the health and safety of its residents."  *Id.* at 6.  This conflicted with the Wings of Hope website, which championed the House as a clean and safe living environment.  *Id.*  Despite these conditions, the Plaintiff "had no choice" but to live at the House.  *Id.*

The Plaintiff further claimed that in August 2014, Bob approached the Plaintiff and told him that he was being made the new House Manager.  *Id.*  The Plaintiff did not identify Bob's

role at Wings of Hope, other than to say he was his "supervisor." *Id.* at 12. The Plaintiff took the position after being told that he could either take the position or move out. *Id.* He alleged that the House Manager job required him to be available at the House seven days a week, and that it included, *inter alia*, the following responsibilities, for which he received no compensation: (a) collecting rent from the other residents; (b) filling out leases when a new resident arrived at the House; (c) evicting residents; (d) settling disputes with neighbors and handling neighbor complaints; (e) ensuring the House's cleanliness; (f) purchasing supplies for the House; (g) taking care of medical emergencies at the House; and (h) maintaining Material Safety Data Sheets ("MSDS") for products kept in the House, because he believed it was necessary under the Occupational Safety and Health Act ("OSHA"). *Id.* at 6–13. The Plaintiff included in the complaint a list of the products purchased for the MSDS sheets and the states from which they originated. *Id.*

The Plaintiff reported to Bob, and he alleged that whenever he approached Bob with a House problem, Bob would tell the Plaintiff to take care of it on his own. *Id.* at 12. The Plaintiff alleged that in August 2015, Alan, an owner and officer of Wings of Hope, fired Bob and replaced him with Sean, who would frequently delegate responsibilities to the Plaintiff; again, the Plaintiff did not elaborate on Sean's title or responsibilities at Wings of Hope. *Id.* at 13–16. In addition, the Plaintiff alleged that he repeatedly complained to Alan and Bob about the House's unsafe conditions, but that they did not respond to those complaints. *Id.* at 16–17. In October 2017, he was evicted from the House, and he has provided no reasoning as to why he was evicted. *Id.* at 17.

In the amended complaint, the Plaintiff raised FLSA and NYLL claims for failure to pay minimum and overtime wages. He also raised NYLL claims for failure to pay spread of hours; notice violations and wage statement violations; and, a claim for negligence. *Id.* at 17–21.

Presently before Court is the Defendants' Rule 12(b)(6) motion to dismiss the amended complaint in its entirety. ECF 33.

## II.     DISCUSSION

In their Rule 12(b)(6) motion, the Defendants ask that the Court consider three exhibits in addition to the amended complaint. ECF 33-2 at 6. Thus, the discussion section of this opinion first provides the legal standard for a Rule 12(b)(6) motion. Next, it gives the standard for considering materials outside of the complaint, and rules on the Defendants' request. Then the opinion addresses the merits of the Defendants' Rule 12(b)(6) motion, starting with the FLSA claims and then proceeding to the NYLL and negligence claims. For the reasons that follow, the Court rules that it may consider materials submitted by the Defendants; it grants the motion to dismiss the FLSA claims; it declines to exercise supplemental jurisdiction over the NYLL and negligence claims; and it dismisses the case.

### A.  The Legal Standard

Under FED. R. CIV. P. 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) provides that dismissal is appropriate if the complaint "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015) (summary order).

Although the Court must accept all allegations in the complaint as true, this tenet is "inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 1950.

## B. Materials Permitted for Review

In reviewing a Rule 12(b)(6) motion, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). While a court is generally prohibited from considering "materials outside the four corners of the complaint," *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011), "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion," *Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240, 2015 WL 5124796, at *7 (E.D.N.Y. Sept. 1, 2015) (Spatt, *J.*) (internal citation and quotation marks omitted).

The Court may consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the

5

Securities and Exchange Commission, and (5) facts of which notice may properly
be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, *J.*)
(quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003)), *aff'd in part
and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L.
Ed. 2d 179 (2006); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-CV-
986S, 2015 WL 5673123, at *2 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No.
07-CV-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

The Defendants ask that the Court consider three exhibits attached to their motion to
dismiss: (1) the Plaintiff's tenant agreement; (2) court documents from a New York State
landlord and tenant proceeding concerning the Plaintiff's eviction from the House, namely, an
Order to Show Cause to Vacate a Default Judgment; and (3) two text messages sent by the
Plaintiff to Sean. ECF 33-2 at 6. The Defendants contend that the Plaintiff referenced the tenant
agreement and his text messages with Sean in the first amended complaint. *Id.* They also assert
that the Court should take judicial notice of the state court documents because they are not in
dispute, and are capable of being verified by sources whose accuracy cannot be reasonably
questioned. *Id.*

In his opposition, the Plaintiff challenges two of the three proposed exhibits: the state
court documents and the text messages. ECF 36 at 7. He argues that these documents are not
properly introduced as evidence because the Defendants lack personal knowledge of the
documents. *Id.* He also claims that the documents do not conclusively defeat the allegations in
the first amended complaint. *Id.* In their reply, the Defendants raise no arguments about these
documents.

The Court rules that it may consider all three of the Defendants' exhibits. In their Rule 12(b)(6) motion to dismiss the original complaint, the Defendants submitted as exhibits the tenant agreement and the state court documents. ECF 8-3, 8-4. In the December 2018 opinion on that motion, the Court ruled that the Plaintiff incorporated by reference the tenant agreement into his complaint when he said that one of his responsibilities was filling out tenant agreement forms. *Kaplan v. Wings of Hope Residence, Inc.*, No. 18-cv-2972, 2018 WL 6437069, at *3 (E.D.N.Y. Dec. 7, 2018) (Spatt, *J.*). The Court also took judicial notice of the state court documents because the "facts referenced are not disputed and are capable of being verified by sources whose accuracy cannot reasonably be questioned." *Id.* at *4.

As to those first two exhibits, the Plaintiff's challenge involves the law of the case doctrine. "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless compelling reasons militate otherwise." *Hernandez v. Sessions*, 731 F. App'x 51, 55 (2d Cir. 2018) (summary order) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Compelling reasons include "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson*, 564 F.3d at 99–100 (internal quotation marks omitted); *see Sheet Metal, Air, Rail and Transp. Workers Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15-CV-2224, 2018 WL 4771897, at *6 (E.D.N.Y. Oct. 3, 2018).

Here, the Plaintiff does not oppose the consideration of the tenant agreement. Also, he raises no challenges as to the state court documents that rely on an intervening change in law; new evidence; or the need to correct a clear error or prevent manifest injustice.

The Court will also consider the text messages proffered by the Defendants.  In his amended complaint, the Plaintiff made express references to text messages between himself and the staff at Wings of Hope.  ECF 29 at 14–15.  *See Kaplan*, 2018 WL 6437069, at *3; *see Rotberg v. Jos A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 475 (S.D.N.Y. 2018) ("The Court acknowledges that Second Circuit precedent indicates that the Court *may* take notice of the content of the underlying text messages . . . because the underlying text messages are documents upon which Rotberg solely relies and which [are] integral to [his] complaint." (internal quotation marks omitted)); *cf. Gesualdi v. Fazio*, No. 16-CV-5209, 2017 WL 8794775, at *1 n.2 (E.D.N.Y. Dec. 12, 2017), *report and recommendation adopted sub nom. Gesualdi v. DiFazio*, 2018 WL 1202640 (E.D.N.Y. Mar. 8, 2018); *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) ("The Complaint thus 'reli[es] on the terms and effect' of the [letters] . . . , rendering those documents 'integral' to the Complaint and appropriate for consideration in adjudicating a motion to dismiss." (internal citations omitted)); *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (Spatt, *J.*) (considering letters because "they were incorporated by reference and ae integral to the complaint").

## C.  The FLSA Claims

The FLSA provides a series of protections for employees that are covered by the statute, including federal minimum wage and overtime protections.  *See* 29 U.S.C. § 206–07; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008 ("Under the terms of the FLSA, employers, as defined, are required to pay their employees specified minimum wages and overtime.").  Congress passed the FLSA in order "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-

being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (quoting 29 U.S.C. § 202(a)). In interpreting the FLSA, "courts construe [it] 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Jacobs v. New York Founding Hosp.*, 577 F.3d 93, 96 n.2 (2d Cir. 2009) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)).

As with the original complaint, the Plaintiff's amended complaint invokes sections 6 and 7 of the FLSA, which provide, in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, . . . not less than the minimum wage rate.

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives an overtime premium wage.

29 U.S.C. §§206(a), 207(a).

To state an FLSA minimum wage claim, a plaintiff must allege that "(1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Kaplan*, 2018 WL 6437069, at *5 (internal quotation marks omitted); *see Casci v. Nat'l Fin. Network, LLC*, No. 13-CV-1669, 2015 WL 94229, at *4 (E.D.N.Y. Jan. 7, 2015) ("[I]t is sufficient for plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period.") (internal quotation marks omitted). To state a plausible FLSA overtime claim, "'a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013)

9

(quoting *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013)).   An employer is subject to the overtime wage provision if either "(1) their employee individually was engaged in commerce or (2) the employer was an enterprise engaged in commerce."  *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009) (internal quotation marks omitted).

The Defendants argue that no FLSA liability exists for individual Defendants Bob and Sean; that the Plaintiff is not an employee engaged in commerce; and that Wings of Hope is not an FLSA enterprise.  ECF 33-2 at 6–13.  The Plaintiff contends that the complaint sufficiently alleges that Wings of Hope is subject to the FLSA under the individual and enterprise coverage standards, and that Bob and Sean exercised control and authority over the Plaintiff, thus making them FLSA employers.  ECF 36 at 6–15.  The Defendants essentially reiterate their arguments in their reply.  *Id.*  The Court will now address each of these issues and more substantively recapitulate the parties' respective arguments.

### 1.  Individual Defendants Bob and Sean

The FLSA imposes liability on the "employer" of any person who violates the FLSA's minimum wage, overtime, and retaliation provisions.  *See* 29 U.S.C. §§ 216(b), (e)(2).  The FLSA defines "employer" as an entity "acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  Individuals may constitute employers under the FLSA.  *See* 29 U.S.C. §§ 203(a).

The Second Circuit has ruled that an employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Carter v. Duchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  An entity need not possess

"formal control" over a worker to qualify as an employer; rather, the entity may simply exercise "functional control" over the worker. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003); *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 450 (S.D.N.Y. 2019).

Courts apply an "economic realities test" to determine whether an individual qualifies as an FLSA employer. *Carter*, 735 F.2d at 12. ("It is common ground that courts, in determining whether an employment relationship exists for purposes of the FLSA, must evaluate the 'economic reality' of the relationship."). In *Carter*, the Second Circuit set out the following four factors to determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12 (citing *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013) (same).

The Second Circuit has emphasized that these factors are non-exhaustive and that a district court's inquiry is fact-intensive. None of the above factors are to be considered dispositive. *See Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). "To the contrary, . . . they provide a 'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 143 (quoting *Zheng*, 355 F.3d 61, 75–76 (2d Cir. 2003)). In 2013, the Second Circuit clarified the *Carter* test with regard to individual liability, holding that:

> to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment. It is appropriate . . . to require some degree of individual involvement in a company in a manner that affects employment-related factors

11

such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate "employer" status.

. . .

A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. Although this does not mean that the individual "employer" must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules—the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but-for causation. Although the answer in any particular case will depend, of course, on the totality of the circumstances, the analyses in [prior Second Circuit] cases . . . as well as the responsibilities enumerated in the *Carter* factors, provide guidance for courts determining when an individual's actions rise to this level.

*Irizarry*, 722 F.3d at 109–10 (internal citations omitted).

In ruling on the FLSA claims in the December 2018 opinion, the Court ruled on each of the *Carter* factors. As to the first factor, although the Plaintiff had alleged that Bob had informed him of his hiring as House Manager, "[s]imply informing someone that he or she has been hired does not plausibly suggest that the messenger is the individual responsible for the hiring." *Kaplan*, 2018 WL 6437069, at *9. As to the second factor, the Court ruled that Bob and Sean's occasional visits to the House to collect rent and texts to the Plaintiff to resolve problems on his own were "hardly the behavior of a supervisor with the power to control his employees' working conditions." *Id.* The Court also ruled that the Plaintiff failed to make any allegations as to the third and fourth factors because the complaint contained "no allegations that Bob or Sean ever made a decision regarding employee wages or maintained employment records." *Id.* at *10. The Court ultimately ruled that, based on the totality of the circumstances, Bob and Sean did not qualify as FLSA employers. *Id.*

In the pending Rule 12(b)(6) motion, the Defendants contend that, as to the first *Carter* factor, the Plaintiff has reiterated his insufficient allegations from the original complaint. ECF 33-2 at 7. Regarding the second factor, the Defendants allege that while the Plaintiff submitted additional information about his time at Wings of Hope, he has not demonstrated that either individual Defendant exercised any material control over the Plaintiff's conditions of employment. *Id.* at 7–8. They also claim that the Plaintiff has yet to make any allegations under the third or the fourth *Carter* factor. *Id.* at 8.

In opposition, the Plaintiff claims that his amended complaint contained specific allegations about Bob and Sean. The Plaintiff alleges that Bob appointed him as the House Manager and told him that if he did not take the job, he would be evicted from the House, and that Bob had fired the prior House Manager before hiring the Plaintiff. ECF 36 at 11. He also alleges that the amended complaint identified text messages from Bob that show how Bob would provide specific instructions on how to handle situations, as well as give the Plaintiff additional responsibilities, such as evicting residents; readying discharge papers for a resident who had just left the hospital; packing a resident's belongings; and taking pictures of a resident's room before calling the police. *Id.* at 11–15.

The Court grants the Defendants' motion to dismiss the FLSA claims as to Bob and Sean in the amended complaint. As an initial matter, the Plaintiff once again fails to raise any allegations pertaining to two of the four prongs of the *Carter* test. The record thus remains devoid of any allegation that the individual Defendants determined the Plaintiff's rate of pay or maintained employment records. These omissions however, weaken the Plaintiff's case against them. *See Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349, 2013 WL 5210142, at *7 (E.D.N.Y. Nov. 18, 2015) ("While she may have supervised employees, there is no indication

that she had the power to . . . determine their rate of pay, or that she maintained records."); *Coley v. Vannguard Urban Imp. Ass'n, Inc.*, No. 12-CV-5655, 2014 WL 4793825, at *5 (E.D.N.Y. Sept. 24, 2014) (noting that the lack of allegations as to two *Carter* factors "favor a finding that Hansard was not Plaintiffs' employer").

As to the first factor, the Plaintiff repeats from the original complaint the allegations that Bob informed him that he had been made House Manager, and that he would be evicted if he refused the job.  In so doing, the Plaintiff fails to cure the defects found by the Court in its December 2018 order, that "[s]imply informing someone that he or she has been hired does not plausibly suggest that he messenger is the individual responsible for the hiring."  *Kaplan*, 2018 WL 6437069, at *9.  The only new claim is an allegation that Bob fired the previous House Manager.  Accepting this allegation as true, and noting that the Defendants did not contest this allegation either in the motion to dismiss or their reply, the Court rules that the first *Carter* factor favors the Plaintiff.

The second factor favors the Defendants.  Although the Plaintiff has alleged that Bob and Sean would provide specific instructions to the Plaintiff by text message as to how to handle certain situations, that is insufficient to show that the Bob and Sean supervised and controlled the Plaintiff's schedule or conditions of employment.  *See Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 62 (2d Cir. 2018) ("Although Appellants testified that Sharma regularly visited the restaurant, tasted the food, and directed employees to clean, they did not testify that Sharma controlled work schedules or other personnel decisions, or that Sharma was personally aware of Appellants' hours or other conditions of employment."); *see also Irizarry*, 722 F.3d at 113–15 (ruling that party did not meet the second factor, despite the defendant's visiting stores regularly and

commenting on problems occurring in those stores).  Accordingly, having met only one of the four *Carter* factors, the Plaintiff's FLSA claim fails as to Defendants Bob and Sean.

### 2. The Plaintiff's Individual Coverage Claim

An employee bears the burden of establishing his individual coverage under the FLSA. *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014); *Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013).  A party is covered by the FLSA where he is (i) "engaged in commerce or in the production of goods for commerce" ("individual coverage") or (ii) "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").  29 U.S.C. §§ 206(a), 207(a). Courts conduct a fact-specific inquiry to determine whether an individual employee is engaged in commerce.  *Kaplan*, 2018 WL 6437069, at *5 (citing *Jacobs*, 483 F. Supp. 2d at 257, and *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211, 79 S. Ct. 260, 3 L. Ed. 2d 243 (1959) (holding that when determining whether employees are "engaged in commerce," courts "focus on the activities of the employees and not on the business of the employer")).

Employees engage in commerce within the meaning of the FLSA "when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof."  29 C.F.R. § 779.103.  However, "the FLSA's coverage does not extend to every business that affects commerce." *Lamont v. Frank Soup Bowl, Inc.*, No. 99-CV-12482, 2001 WL 521815, at *3 (S.D.N.Y. May 16, 2001).  For instance, Congress specifically excluded from "coverage employees whose activities merely 'affect commerce,' indicat[ing] its intent not to make the scope of the [FLSA] coextensive with its power to regulate commerce.'"  *Mitchell*, 358 U.S. at 211, 79 S. Ct. at 264.  "The dispositive test for FLSA

15

coverage asks whether a plaintiff was an employee in the channels of interstate commerce, as distinguished from [an employee] who merely affected that commerce." *Xelo v. Mavros*, No. 03-CV-3665, 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (internal citations and quotation marks omitted).

The Defendants argue that any work performed by the Plaintiff at the House merely affected commerce, and that the Plaintiff was not in the channels of interstate commerce. ECF 33-2 at 9. They further assert that the Plaintiff makes inconsistent statements regarding the work he actually performed: while he alleged in the amended complaint that the House was unsafe for human habitation because of, *inter alia*, garbage strewn around the House, he also claimed that he cleaned the house on a daily basis. *Id.* at 9–10. They further note that the Plaintiff gave credit to another one of the House's residents who allegedly "clean[ed] the house all week long," and criticized another resident who had failed to clean a part of the House. ECF 33-5. As to the paper forms detailing the supplies he purchased for the House, the Defendants contend that the Plaintiff has still failed to show that he did more than merely affect commerce, because purchasing supplies was only one of his duties as House Manager. *Id.* at 10–11.

The Plaintiff contends that he not only cleaned the house with supplies that originated out-of-state, but that he also handled paper—by way of forms given to the House's residents, as well as their mail—that moved in interstate commerce. ECF 36 at 6. He also claims that the text messages provided by the Defendants do not conclusively defeat the amended complaint's allegations that it was the Plaintiff who primarily cleaned the House. *Id.* at 7. In reply, the Defendants assert that: (a) the purchase and use of cleaning supplies are insufficient to establish FLSA coverage if they involve only sporadic and occasional shipments of insufficient amounts of goods; and (b) any cleaning the Plaintiff did was pursuant to the agreement he signed before

taking up residence in the House, making that responsibility a part of his tenancy, and not part of a job.  ECF 37 at 5–6.

The parties do not dispute that the Plaintiff handled cleaning supplies and paper that had travelled in interstate commerce.  The only dispute for the Court to resolve then is whether the Plaintiff's handling of these items affected commerce or engaged in commerce.

To be engaged in commerce, a "substantial part of the employee's work must be related to interstate commerce."  *Berrezueta v. Royal Crown Pastry Shop, Inc.*, No. 12-CV-4380, 2014 WL 3734489, at *8 (E.D.N.Y. Jul. 28, 2014) (internal quotation marks omitted).  "[S]poradic or occasional shipments of insubstantial amounts of goods are insufficient to bring an employee within the coverage of the [FLSA]."  *Remmers v. Egor*, 332 F.2d 103, 104 (2d Cir. 1964); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 292 (E.D.N.Y. 2007).  "[W]here an employee's interstate activities are *de minimis*, or not regular or recurring, as a practical matter neither courts nor the [Department of Labor] consider the employee covered under the FLSA."  *Berrezueta*, 2014 WL 3734489, at *8 (citing *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 466 (S.D.N.Y. 2006)).

An individual may engage in commerce by ordering cleaning supplies and equipment for an entity.  *See Boekemeier* v. *Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000).  "Such purchases will be sufficient to invoke the protection of the FLSA unless they involve only sporadic and occasional shipments of insubstantial amounts of goods."  *Id.* (internal quotation marks omitted) (citing *Mabee v. White Plains Pub. Co.*, 327 U.S. 178, 181, 66 S. Ct. 511, 90 L. Ed. 607 (1946), and *Remmers*, 332 F.2d at 104).

An employee is engaged in commerce when regularly using the mails and telephone for interstate communication, or when regularly travelling across state lines while working.  29

C.F.R. §778.103. As with the purchasing of cleaning supplies, such use of the mails must be a "regular and recurrent" part of the employee's duties. 29 C.F.R. § 776.10. Evidence that an employee sometimes performed bank transactions or delivered mail is not sufficient to show that an individual was "in the channels of commerce." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 90 (E.D.N.Y. 2010). The distributing of "mail and phone cards" to the residents of a group home "do[es] not constitute the type of use of the mails or channels of interstate commerce sufficient to trigger coverage under the [FLSA]." *Bowrin*, 417 F. Supp. 2d at 468.

The Court finds that the Plaintiff's amended complaint is insufficient to overcome the Defendants' motion to dismiss. First, as to the purchasing of supplies, the Plaintiff has provided a detailed list of the supplies used to clean the house, as well as the paper, and their states of origin. However, he only alleges the frequency with which he would purchase the supplies in general terms. See ECF 29 at 8 ("Plaintiff purchased cleaning supplies when the House ran out of them."). While there is no clear standard "for determining when an individual employee's interstate activities tips the scale and becomes 'substantial' for purposes of determining coverage," courts that have so ruled have often had some quantitative basis for their decision. *Bowrin*, 417 F. Supp. 2d at 466; In *Boekemeier*, 86 F. Supp. 2d at 287 (ruling that an employee's use of the phone and mails to make fourteen to thirty major purchases from out-of-state vendors between 1992 and 1997 was sufficient for FLSA coverage).

The Court notes that it expressly warned the Plaintiff of this issue in the December 2018 order. *See Kaplan*, 2018 WL 6437069, at *6 ("Without understanding the frequency with which the Plaintiff accomplished certain tasks, it is not possible to ascertain that a substantial part of the Plaintiff's work related to interstate commerce."). Thus, based on this vagueness, the Plaintiff

has failed to establish individual coverage with regard to the cleaning supplies. *See Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) ("Her allegations of regular use of items ordered from outside of New York or regular contract with persons and organizations also from out of state are vague, provide no information about the frequency of those contacts, and therefore cannot support an assertion that a substantial part of the Plaintiff's work closely relates to interstate commerce.") (internal quotation marks omitted).

The Court also determines that the Plaintiff has not stated a claim for individual coverage based on his handling and distribution of the House's mail. The Court agrees with the *Bowrin* holding's conclusion in this regard. 417 F. Supp. 2d at 468.

### 3. Wings of Hope's Enterprise Coverage

To allege that an employer is subject to enterprise coverage, a plaintiff must plead that an employer has (1) employees engaged in commerce or in the production of goods for commerce; and (2) an annual gross volume of sales greater than $500,000. 29 U.S.C. § 201(s)(1)(A); *Jacobs*, 577 F.3d at 99 n.7 ("We note that the existence of FLSA enterprise coverage is a two-step determination, and the Employees must ultimately prove both steps."). The Court acknowledges that it ruled in its December 2018 opinion that the Plaintiff had met the second prong of the test, because Wings of Hope charges residents $450 to $550 per month in rent; the company has approximately 12 homes occupied by between 10 and 16 residents; and the minimum gross income of the company is approximately $648,000, well above the $500,000 statutory threshold. *Kaplan*, 2017 WL 6437069, at *8 (citing 29 U.S.C. § 201(s)(1)(A)).

To satisfy the first prong, a plaintiff must allege that he or she "handled supplies or equipment that originated out-of-state." *Rodriguez* v. *Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011); *see also Jacobs*, 577 F.3d at 99 n.7 ("The [first] requirement is rarely

difficult to establish, however, because it is met by showing that two or more employees have 'handl[ed] . . . materials that have been moved in . . . commerce[.]'" (quoting 29 U.S.C. § 201(s)(1)(A))); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 328 (S.D.N.Y. 2002) ("[T]he employee does not himself need to be involved in an activity that affects interstate commerce; even a local laundry is covered if the soap it uses moved in interstate commerce." (internal citations and quotation marks omitted)).

The Defendants allege that the use of various cleaning supplies at the House was sporadic, occasional, and insubstantial. ECF 33-2 at 12. They also argue that the Plaintiff fails to establish that his activities necessarily required him to engage in interstate commerce, because a House Manager is not connected to interstate commerce based on a list of job responsibilities. *Id.* at 12–13.

In opposition, the Plaintiff argues that the amended complaint set forth facts to plausibly conclude that his House Manager responsibilities were connected to interstate commerce. ECF 36 at 8. He reiterates his allegations about cleaning the House daily and handing out the residents' mail, adding that either he or the Defendants would purchase the cleaning supplies. *Id.* at 10. In reply, the Defendants argue that Wings of Hope neither regularly produced goods for interstate commerce nor regularly shipped goods for interstate commerce, and that Wings of Hope only sporadically and occasionally shipped insubstantial amounts of cleaning supplies that travelled in interstate commerce. ECF 37 at 5.

The Court rules that the Plaintiff has not plausibly claimed that Wings of Hope is subject to enterprise coverage under the FLSA. Again, he provides no information as to the frequency with which he and the Defendants purchased cleaning supplies for the House, or for any of their other properties. The assertion that the House required daily cleaning fails show the requisite

frequency for FLSA coverage. *See Walker v. The Interfaith Nutrition Network, Inc.*, No. 14-CV-5419, 2015 WL 4276174, at *3 (E.D.N.Y. Jul. 14, 2015) ("Plaintiffs' conclusory allegation that Defendants routinely competed in the marketplace with other commercial enterprises provides no indication as to the actual frequency of Defendants' activities.") (internal quotation marks omitted). In one such case, *Locke*, where the purchasing of cleaning supplies was deemed sufficient for FLSA coverage, the Plaintiff had alleged that he bought cleaning supplies "every Monday or whenever there was a need." E.D.N.Y. 07-CV-3226, doc. 36 at 8; *see also* 690 F. Supp. 2d 77 at 90. As noted above, the Plaintiff makes no allegations as to the actual frequency of the cleaning supplies purchases.

Although the Plaintiff claims that the Court had ruled that an assertion that Wings of Hope employees had purchased cleaning supplies would have satisfied the first prong, the Court also noted that this allegation would fail if the purchases of supplies were "only sporadic and occasional." *Kaplan*, 2018 WL 6437069, at *7 (internal quotation marks omitted). Because the Plaintiff has not alleged the frequency of the cleaning supplies purchases, he fails to state a plausible claim for enterprise coverage based on that occurrence.

### D. Supplemental Jurisdiction over the NYLL and Negligence Claims

The Defendant asks the Court to dismiss the Plaintiff's NYLL claim because courts analyze those claims under the same standard as FLSA claims. ECF 33-2 at 13. In the alternative, it asks that the Court decline to exercise supplemental jurisdiction over the Plaintiff's NYLL and negligence claims. *Id.* at 14.

In his opposition, the Plaintiff raises no arguments as to supplemental jurisdiction. The Defendants reiterate their arguments in their reply.

21

Pursuant to 28 U.S.C. § 1367, a court has supplemental jurisdiction to any related claim that arises out of the same case or controversy as the original claim granted subject matter jurisdiction. 28 U.S.C. § 1367(a). The Court can only exercise supplemental jurisdiction over the Plaintiff's NYLL and negligence claims if they arise from the same common nucleus of operative fact as the Plaintiff's federal causes of action. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130 , 1138, 16 L. Ed. 2d 218 (1966)).

When determining whether claims arise from a "common nucleus of operative fact," the Second Circuit looks to whether "the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, the Court rules that the common law negligence claim, based on the Defendants' allowing the House to become unsafe and hazardous to residents, does not arise out of the same nucleus of operative fact as the Plaintiff's FLSA claims for a minimum wage and overtime. The Defendants' obligation to maintain a safe residence does not pertain to their duty to compensate the Plaintiff for his role as House Manager. *See Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 381 (E.D.N.Y. 2011) (Spatt, *J.*) ("This additional compensation is not considered a part of the Plaintiff's wages, and therefore does not factor in to the calculation of the Plaintiff's regular rate

22

for purposes of overtime compensation.").  In addition, because the parties are from the same state, the Court lacks diversity jurisdiction to hear the Plaintiff's common law negligence claim. Accordingly, the negligence claim does not meet the same "case or controversy requirement" of Section 1367(a), and the Court declines to exercise supplemental jurisdiction over that claim.

As to the NYLL claims, the Court rules that they do arise out of the same case or controversy as the FLSA claims.  Two of the NYLL claims mirror the FLSA claims, and the other NYLL claims stem from the Defendants' alleged failure to compensate the Plaintiff for his work as House Manager.

However, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In employing its discretion, the district court balances the "values of judicial economy, convenience, fairness, and comity."  *Cohill*, 484 U.S. at 350, 108 S. Ct. 614.  In the Second Circuit, "when the federal claims are dismissed the state law claims should be dismissed as well."  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (internal citations and quotation marks omitted).  "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining jurisdiction over the remaining state-law claims.'"  *Id.* (citing *Cohill*, 484 U.S. at 350 n.7).  As the Supreme Court noted in *United Mine Workers v. Gibbs*, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  383 U.S. at 726, 86 S. Ct. 1130.

Having  already dismissed the Plaintiff's FLSA claims, the Court declines to exercise supplemental jurisdiction over the NYLL claims.  *See* 28 U.S.C. § 1367(c); *Marcus v. AT&T*

*Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *Purgess. v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). *See, e.g.*, *Rivelli v. Penn. Higher Educ. Assistance Agency*, No. 18-CV-3322, 2019 WL 1473091, at *4 (E.D.N.Y. Apr. 3, 2019) (Spatt, *J.*) (declining to exercise supplemental jurisdiction after all federal claims are dismissed); *Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 777 (E.D.N.Y. 2018) (Spatt, *J.*) (same).

Accordingly, the Plaintiff's state law claims and his negligence claim are dismissed without prejudice.

## III.    CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Rule 12(b)(6) motion to dismiss the complaint.  The Clerk of the Court is directed to close the case.


It is **SO ORDERED.**


| _____/s/ Artur D. Spatt_____ | \_\_\_\_\_February 7, 2020\_\_\_\_\_ |

Arthur D. Spatt, U.S.D.J.                          Date